ROBERT E. HIGGINS AND WIFE, MARGARET G. HIGGINS v.
BUILDERS AND FINANCE, INCORPORATED

No. 733SC759

(Filed 28 November 1973)

1. **Appeal and Error § 45— abandonment of assignments of error**
   Assignments of error not supported by reason or argument or the citation of authority in appellant's brief are deemed abandoned.

2. **Rules of Civil Procedure § 41— nonjury trial — motion for involuntary dismissal**
   In nonjury civil cases the appropriate motion by which a defendant may test the sufficiency of plaintiff's evidence to show a right to relief is a motion for involuntary dismissal under Rule 41(b).

3. **Appeal and Error § 58— appeal from injunction — authority of appellate court to make findings**
   While the findings of fact made by the trial court in an interlocutory order granting or denying injunctive relief are not binding on appeal, and the appellate court may review the evidence and make its own findings, the trial court's findings are binding if supported by the evidence when the appeal is from a judgment which is a final determination of the rights of the parties.

4. **Deeds § 20— restrictive covenants — single family dwelling — modification of duplex**
   The cutting of a 3-foot wide opening between the two portions of each of two duplex houses and the finishing of but one complete kitchen in each house did not constitute a sufficient modification of the duplexes so that they must be considered as conforming as a matter of law to a restrictive covenant prohibiting use of land in a subdivision for other than single family residential dwellings, and the trial court's findings were sufficient to support its conclusion

that the houses have not been converted into single family residential dwellings to conform to the restrictive covenant.

5. **Deeds § 20— restrictive covenants — single family dwelling — prohibition of unoccupied duplex**

Subdivision restrictive covenant providing that "no structure shall be erected, altered, placed or permitted to remain on any lot other than for use as a single family residential dwelling" is not merely a "use" restriction prohibiting the occupancy of each house by more than one family but would be violated by the erection of a duplex house on any lot, even though it remained vacant and unoccupied by even one family.

6. **Deeds § 20— restrictive covenants — single family dwelling — consent order permitting modification of duplexes — effect**

In an action for injunctive relief to enforce subdivision restrictive covenants, consent order permitting defendant to modify partially completed duplex structures into single family residential dwellings to conform with the restrictive covenants merely freed defendant from a temporary restraining order prohibiting construction on the structures and neither freed defendant from the effect of the restrictive covenants nor in any way inhibited the court's power to enforce them when defendant persisted in their violation.

APPEAL by defendant from *Tillery, Judge,* January 1973 Civil Session of Superior Court held in CRAVEN County.

Civil action for injunctive relief to enforce restrictive covenants in a residential subdivision. Plaintiffs are the owners of Lot 1 and defendant is the owner of Lots 2, 3, 4 and 5 of North Hills as shown on a plat of said subdivision recorded in the office of the Register of Deeds of Craven County. Plaintiffs acquired their lot on 20 June 1969 by deed from the defendant. The subdivision was developed by Guion E. Lee and wife, who are principal stockholders of defendant, under a general scheme of development set forth in the recorded map, and common restrictions apply to all lots of like character or similarly situated in said subdivision. The particular restrictive covenant applicable to the lots of plaintiffs and defendant and pertinent to this appeal is as follows:

> "(1) LAND USE AND BUILDING TYPE: No structure shall be erected, altered, placed or permitted to remain on any lot other than for use as a single family residential dwelling, with a private garage for not more than two (2) automobiles. . . . "

This action was commenced on 26 May 1972. In their complaint filed that date plaintiffs alleged that defendant had commenced constructions on Lots 3 and 4 of duplex apartments

or multi-family dwellings in violation of the recorded restrictive covenants, and prayed for relief as follows: (1) for an immediate order restraining defendant from continuing construction of the duplex houses then under construction and directing defendant to appear and show cause why such order should not be continued; (2) for a permanent injunction enjoining defendant from constructing other buildings in North Hills in violation of the restrictive covenants; and (3) for a mandatory injunction to compel the defendant to modify the buildings then under construction to the end that they will conform to the restrictive covenants, or to remove said buildings.

A temporary restraining order was issued on 29 May 1972, restraining defendant from performing work of any kind on Lots 2, 3, 4 and 5 and directing defendant to appear on 5 June 1972 to show cause why the restraining order should not be continued until the final determination of this action. At the request of defendant, the show cause hearing was continued until 24 July 1972, the temporary restraining order being continued in effect until that date. On 24 July 1972 there was filed an order, dated 14 July 1972, signed by Judge Robert D. Rouse, Jr., Resident Judge of Superior Court, and consented to by the parties and their counsel. This consent order recites that it appeared to the court from statement of counsel "that all matters and things in controversy have been settled between the parties by the defendant agreeing to modify the existing structures situate upon Lots 3 and 4 of North Hills Subdivision . . . to conform with the restrictive covenants for said North Hills Subdivision recorded in Book 714, at page 206, Craven County Registry." The order then provided that the restraining order theretofore entered be modified as follows:

"1. Defendant may, at its option, commence constructions upon the existing structure situate upon Lots Numbers 3 and 4 of North Hills Subdivision to modify the exising structures into a single family residential dwelling upon each lot to conform with the restrictive covenants for North Hills Subdivision.

"2. Upon completion of the modification of the existing structures into single family residential dwellings to conform with the restrictive covenants for North Hills Subdivision, this action shall be dismissed."

On 7 September 1972 plaintiffs filed a motion in the cause alleging that defendant was not converting the duplex houses

into single family dwellings but had merely cut a doorway between the two apartments of said duplex houses and was about to complete them in such manner that they are, in fact, duplex houses and not single family residences. In this motion plaintiffs asked for an immediate order restraining defendant from continuing the construction of the duplex houses then under construction on Lots 3 and 4, for an order directing defendant to show cause why it should not be held in contempt of court for violating the restraining order theretofore entered, and that the consent order of 14 July 1972 which modified the restraining order theretofore entered "be terminated and set aside." In response to this motion, Judge Walter W. Cohoon, Judge presiding at the September session of Superior Court held in Craven County, signed an order dated 8 September 1972 restraining defendant from performing work of any kind on Lots 2, 3, 4 and 5 of North Hills, and ordering defendant to appear and show cause why this restraining order should not be continued until final determination of this action. Defendant filed answer to plaintiffs' motion of 7 September 1972 and alleged that it was defendant's intention "that the existing structure on each lot will accommodate only one family," and that modification then in progress pursuant to the consent order of 14 July 1972 "complies with the restrictive covenants for North Hills Subdivision." Following a hearing held in response to the show cause order, Judge Cohoon signed an order, dated 25 September 1972, in which he found as a fact that the structures upon the lots of land in controversy were "still under construction by the defendant and that the temporary retraining order entered on September 8, 1972 is premature and should be dismissed." In accordance with this finding, Judge Cohoon dismissed the temporary restraining order which he had entered on 8 September 1972 and ordered that the consent order signed by Judge Rouse on 14 July 1972 be continued in full force and effect.

This case then came to trial before Judge Bradford Tillery, presiding at the 29 January 1973 civil session of Superior Court, trial being before the Judge sitting without a jury. After hearing evidence presented by plaintiffs and defendant, Judge Tillery signed judgment dated 7 February 1973 making findings of fact and conclusions of law. On motion of defendant to make additional findings of fact, this judgment was subsequently amended, the amended judgment being dated and filed on 19 April 1973. In this amended judgment the court made findings of fact as to the ownership of the lots by the parties and the application

thereto of the restrictive covenants of record under the general scheme of development of the North Hills Subdivision, and in addition made, among others, specific findings of fact as follows:

"6. That the Defendant has recently completed two certain buildings or dwellings. One on Lot 3 of North Hills Subdivision and one on Lot 4 of North Hills Subdivision.

"7. That at the time of the commencement of each of said dwellings they were intended by the Defendant to be built as duplex houses and as such were not constructed for use as single family residential dwellings."

\*     \*     \*     \*     \*

"12. That the buildings on Lots 3 and 4 of North Hills are now complete and in their present condition they have not been modified so as to conform to the building conditions and restrictive covenants of North Hills for that: (a) They have the general outside appearance of duplex houses; (b) They have two electrical drop service wires from the public utility serving said subdivision of each of said houses; (c) that each of said houses has a wall completely dividing one end of the residence from the other and that this wall has been modified only to the extent of cutting a 3 foot opening between two rooms in the back portion of the house; (d) that each of said residences has two utility rooms; (e) that each of said residences has plumbing and electrical facilities to accommodate separate washing machines and dryers in each of the separate utility rooms in said residences; (f) that each of said residences has two front doors and two back doors; (g) that each of said residences has one complete kitchen and in addition has wiring and plumbing 'stubbed in' for an additional kitchen; (h) that each of said residences has two electrical meters to serve separate electrical circuits in each residence; (i) that the official postal enumerations placed on the residences by the City of New Bern are 1505A & B and 1507A & B; (j) that the buildings on Lots 3 and 4 each have two air conditioning systems and two heating systems to heat and cool the separate ends of said residence.

"13. Only one structure has been built upon Lot Number 3 of North Hills Subdivision.

"14. Only one structure has been built upon Lot Number 4 of North Hills Subdivision.

"15. The structure upon Lot 3 is vacant, unoccupied and not in use.

"16. The structure upon Lot 4 of North Hills Subdivision is vacant, unoccupied, and not in use."

On these findings of fact the court made conclusions of law in substance as follows: that the construction of duplex residences on Lots 3 and 4 in the manner originally contemplated by defendant is in violation of the recorded restrictions applying to all lots of a like character in North Hills Subdivision; that the consent order entered by Judge Rouse on 14 July 1972 has been violated "for that the defendant did not commence construction upon the structures existing upon Lots 3 and 4, North Hills, as of that date for the purpose of modifying said structures into single family residential dwellings to conform with the restrictive covenants for North Hills Subdivision"; that "said structures have not as a matter of law been converted into single family residential dwellings to conform with the restrictive covenants"; and that plaintiffs are entitled to "such injunctive relief as will afford them an equitable remedy for the defendant's violation of the restrictive covenants and its failure to comply with the terms of the consent order above referred to."

Upon these findings of fact and conclusions of law, the court in the judgment dated 19 April 1973, adjudged and decreed that defendant be permanently enjoined from constructing in North Hills Subdivision any building in violation of the recorded restrictive covenants, and granted plaintiffs' prayer for a mandatory injunction to compel defendant to modify the buildings on Lots 3 and 4 to make them conform to such restrictive covenants. In connection with granting plaintiffs' prayer for a mandatory injunction, Judge Tillery ordered defendant to submit to the court within thirty days "a plan under which it proposes to modify said dwellings," and provided that if at conclusion of the thirty-day period the defendant had not submitted a plan acceptable to the court, this cause should come on for hearing "for such other and further action as the Court may deem just and proper."

On 18 May 1973 defendant submitted the following plan under which it proposed to modify the structures on Lots 3 and 4 as provided in the 19 April 1973 judgment:

"(1) To build an outdoor court 12 feet x 23 feet 6 inches enclosed by a solid fenced wall completely closing off

the front steps on the north end of each structure. The only access to the court would be from the inside of the dwelling house.

"(2) Install a wrought iron rail around the stoop and down the steps on the south end of the structure situate on Lot No. 3 of North Hills Subdivision.

"(3) If the Court so orders, the partition in the family room will be removed. This, however, is not a part of the Modification Plan since the present occupant of the dwelling house on Lot No. 3 of North Hills Subdivision prefers that the wall remain as is."

This case then came on for hearing before Judge Tillery, presiding at the 28 May 1973 session of Superior Court held in Craven County, upon the foregoing plan of modification as submitted by the defendant. On 20 June 1973 Judge Tillery signed judgment in which he concluded as a matter of law that the plan of modification submitted by defendant on 18 May 1973 was inadequate and not acceptable to the court in that it "would be insufficient to make said buildings conform to the building conditions and restrictive covenants of North Hills Subdivision as the same are recorded in Book 714 at page 206, Craven County Registry." The court ordered defendant, within sixty days after receiving notice of the judgment, "to remove the buildings located upon Lots Nos. 3 and 4 of North Hills Subdivision either by razing said buildings ·or by removing them from the limits of North Hills," as the subdivision is shown on the recorded plat. Defendant excepted to this judgment and appealed.

*Lee & Hancock by C. E. Hancock, Jr. and Moses D. Lasitter for plaintiff appellees.*

*Dunn & Dunn by Raymond E. Dunn for defendant appellant.*

PARKER, Judge.

[1] No reason or argument has been stated and no authority has been cited in appellant's brief in support of appellant's first four assignments of error. Accordingly, these will be taken as abandoned. Rule 28, Rules of Practice in the Court of Appeals.

[2] At the close of the evidence the attorney for defendant moved under Rule 50 of the Rules of Civil Procedure for a

"directed verdict dismissing the plaintiffs' case." Denial of this motion is the subject of appellant's fifth assignment of error. Directed verdicts are appropriate only in jury cases. *Bryant v. Kelly,* 279 N.C. 123, 181 S.E. 2d 438. This case was tried without a jury. In nonjury civil cases the appropriate motion by which a defendant may test the sufficiency of the plaintiff's evidence to show a right to relief is a motion for involuntary dismissal under Rule 41 (b). Though defendant's motion was incorrectly designated, we shall treat it as having been a motion for involuntary dismissal under Rule 41 (b) and shall pass on the merits of the questions appellant seeks to raise by this appeal. *Neff v. Coach Co.,* 16 N.C. App. 466, 192 S.E. 2d 587; *Mills v. Koscot Interplanetary,* 13 N.C. App. 681, 187 S.E. 2d 372.

G.S. 1A-1, Rule 52 (a) (1) provides as follows:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment."

[3] The trial judge in the present case, after denying defendant's motion to dismiss, properly complied with the requirements of Rule 52 (a) (1) by entering judgment in which the court found the facts specially. While upon an appeal from an interlocutory order granting or denying injunctive relief the appellate court is not bound by the findings of fact made by the trial court but may review the evidence and make its own findings of fact, *Board of Elders v. Jones,* 273 N.C. 174, 159 S.E. 2d 545, the rule is otherwise when, as here, the appeal is from a judgment which is a final determination of the rights of the parties. In such a case the trial court's findings of fact are binding on appeal, if supported by the evidence. *Coggins v. City of Asheville,* 278 N.C. 428, 180 S.E. 2d 149. "The mere fact that equitable (injunctive) relief is granted gives us no authority to modify findings determinative of issues of fact raised by the pleadings." *Cauble v. Bell,* 249 N.C. 722, 107 S.E. 2d 557. In the present case, the judgment appealed from is a final determination of the rights of the parties. Therefore, in this case the trial court's findings of fact are conclusive on this appeal, just as would be the verdict of a jury in a case tried before judge and jury, if there be evidence to support them, and this is so even though the evidence might sustain findings to the contrary. *Knutton v. Cofield,* 273 N.C. 355, 160 S.E. 2d 29. Accordingly, the initial question presented by

---

Higgins v. Builders and Finance, Inc.

---

this appeal is whether the evidence was sufficient to support the trial court's findings of fact. If so, these findings are binding on this appeal and the only question remaining is whether the facts found by the trial court are, in turn, sufficient to support its conclusions of law and the judgment entered.

[4]    There was ample evidence to support the trial court's findings of fact. Defendant's witness, Guion E. Lee, who was the principal stockholder and an officer of defendant corporation, testified: "I intended to build duplex houses when I started these in this case." This witness had been one of the original developers of the North Hills Subdivision and as such had signed the instrument dated 28 April 1967 by which the restrictive covenants applicable in this case had been imposed. He testified that "[t]he restrictions in this subdivision preclude the use of duplex or multi-family dwellings," but expressed the view that "these restrictions are out-moded." Indeed, appellant does not challenge the trial court's finding, contained in Finding of Fact No. 7 in the judgment dated 19 April 1973, that "at the time of the commencement of each of said dwellings they were intended by the defendant to be built as duplex houses. . . ." Nor does appellant challenge the detailed findings contained in subparagraphs (a) through (j) in Finding of Fact No. 12 as to the exact manner in which the buildings have actually been completed. On this appeal appellant challenges only that portion of Finding of Fact No. 7 in which the court found that the buildings "were not constructed for use as single family residential dwellings," and that portion of Finding of Fact No. 12 in which the court found that the completed buildings "have not been modified so as to conform to the building conditions and restrictive covenants of North Hills." Appellant contends that cutting a 3-foot wide opening between the two portions of each duplex house and particularly the finishing of but one complete kitchen in each house so modified them that as a matter of law they must now be considered as conforming to the restrictive covenants. We do not agree. Appellant's contention simply ignores all of the remaining factual findings made by the trial court in Finding of Fact No. 12, all of which are fully supported by the evidence, and all of which tend to show that each structure which defendant has erected is in fact and in law, a structure "other than for use as a single family residential dwelling." Appellant's contention ignores as well the obvious fact that the two minimal changes made by it in the structures have not effectively changed them from what admittedly de-

fendant originally intended them to be. The insertion of a door into the 3-foot opening and the installing of a range and a sink for which plumbing and wiring are already provided in the unfinished kitchen, are all that is required to restore these structures exactly to their original design. When all facts found by the trial court are considered together, they fully support the court's conclusion that the structures erected by defendant "have not as a matter of law been converted into single family residential dwellings to conform with the restrictive covenants of North Hills Subdivision."

[5]  Appellant's contention that the restrictive covenant with which we are here concerned is a "use" restriction, and that the most that plaintiffs are entitled to is an injunction prohibiting the occupancy or "use" of each house by more than one family, is equally unpersuasive. In clear language the restriction prohibits the erection, altering, placing or permitting to remain on any lot of any structure other than for use as a single family residential dwelling. Erecting on any lot or permitting to remain thereon any duplex house, even though it remain vacant and unoccupied and not "used" at all, even by one family, would be a violation of the covenant.

[6]  We also find without merit appellant's final contention, made in its brief, that the consent order entered by Judge Rouse on 14 July 1972 established "the law of the case" and that the "most Judge Tillery could do would be to spell out in exact terms what, if anything, is additionally needed to modify the existing structures into a single family residential dwelling in accordance with the consent judgment entered on July 14, 1972." Appellant's contention completely mistakes the effect of the consent judgment signed by Judge Rouse. That judgment did not abrogate the restrictive covenants applicable to defendant's lots nor did it render the court thereafter powerless to enforce them in this litigation. Rather, the consent judgment served merely to free defendant from the restraining order theretofore entered to the extent of permitting defendant, at its option, to commence construction upon the structures which it had begun to build on Lots 3 and 4 "to modify the existing structures into a single family residential dwelling upon each lot to conform with the restrictive covenants for North Hills Subdivision." The consent judgment neither freed defendant from the effect of the restrictive covenants nor in any way inhibited the court's power to enforce them when defendant persisted in their violation.

The record in this case indicates that each of the several Superior Court Judges who have been concerned with this litigation have exercised patience and care to give defendant every reasonable opportunity to comply with the restrictive covenants and to minimize any damage it might suffer as a result of its own initial deliberate attempt to violate them. The record also indicates that defendant failed to make any good faith effort to utilize the opportunities allowed it to bring itself into compliance with those restrictions. Indeed, the evidence in this case is indicative of a studied, deliberate and determined effort on the part of the defendant to persist in its original intention of violating the covenants. Defendant's own conduct led directly to the judgment of which it now complains, and defendant is solely responsible for such loss or expense as it may now incur by reason of being required to comply with that judgment. Defendant may not justly complain at the harshness of the judgment finally entered. Its own conduct made obvious that any less stringent measure would be ineffectual. The judgment appealed from is

Affirmed.

Chief Judge BROCK and Judge CAMPBELL concur.